IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL DUCHELLE GREEN, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 7:21cv00151 |
| v. | ) ) | **MEMORANDUM OPINION** |
| MR. KIAOS RAGSDALE,[1] | ) ) ) | By:  Hon. Thomas T. Cullen United States District Judge |
| Defendant. | ) | |

Michael Duchelle Green, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that defendant Officer Ragsdale used excessive force against him. This matter is before the court on Plaintiff's motion for summary judgment.[2] Having reviewed the record, the court concludes that Green has not shown that he is entitled to judgment as a matter of law and, therefore, the court will deny his motion.

I.

Green alleges in his verified complaint that on February 10, 2021, he was discussing COVID-19 with Officer Ragsdale and another officer in his dorm when "the conversation got a little heated." (Compl. at 1–2 [ECF No. 1].) According to Green, after a "few words w[ere] pass[ed]," the other officer called for the dorm to lock down. (*Id.* at 3.) Green states that he turned to go to his cell and, in response to a conversation with another inmate, Green said to that inmate, "Go ahead before I slap the shit out of you." (*Id.*) When Green was 10 feet away

---

[1] The clerk is directed to update the docket to reflect the correct spelling of Officer Ragsdale's first name.

[2] Officer Ragsdale has also filed a motion for summary judgment (ECF No. 115) and the court will address that motion separately.

from his cell, he alleges that Officer Ragsdale "violently thrust [him] in the shoulder and neck area, knocking [him] into the wall beside [his] door" and his knee "hit the door." (*Id.*) Green states that he then went inside his cell to "l[ie] down," when Officer Ragsdale entered the cell and "tr[ied] to fight [him]." (*Id.*) He claims that another officer "tr[ied] to restrain Officer Ragsdale through the ent[ire] ordeal" and was able to get Ragsdale out of the cell after about seven to nine minutes. (*Id.*) According to Green, a sergeant then came in the dorm to restrain Officer Ragsdale. (*Id.*) Green claims that he suffers neck, lower back, and left shoulder pain because of the incident. (*Id.*)

Green argues that he is entitled to summary judgment because "the clear and convincing evidence of the s[u]rveillance video footage and at least 60 docket text exhibits and factual material to be examine[d] by the jury, and evidence of a deliberate indifferent with an[] evil intent of guard brutality to cause harm." (ECF No. 101 [*sic* throughout].) Green states that "there are medical records to demonstrate the existence of a significant injury that pr[oves] the existence of cruel and unusual punishment at the hands of Mr. K. Ragsdale." He also states that the surveillance video "prov[es] the callous and unnecessary and wanton infliction of pain." (*Id.*) He alleges that there is also "additional evidence" of a Halifax Police Department investigation report and the Blue Ridge Regional Jail Authority's Standard Operating Procedures on use of force. Green states that he went for an MRI on January 28, 2022, "concerning the injuries [he] sustained," and "arrangements are being made for surgery." (*Id.*) Green requests that the court award him $400,000 in damages or a jury trial "because the use of phy[s]ical force automatically amounts to cruel and unusual punishment."

Officer Ragsdale has submitted a declaration telling a different version of the events on February 10, 2021. (*See* Ragsdale Decl., Mar. 2, 2022 [ECF No. 116-1].) Officer Ragsdale states that, at approximately 9:28 AM, he and another officer were assisting a nurse in administering medication to inmates in Green's dorm. Officer Ragsdale asserts that Green approached him after receiving his medication and stated that he "was tired of being in a cell with three men, and he couldn't take a shit in peace if he wanted to." (*Id.* ¶ 2.) Officer Ragsdale states that "[e]ven though Green was using vulgar language at that time, [he] was giving him time to vent and did not plan on writing him up." (*Id.* ¶ 3.) Officer Ragsdale claims that he "was sympathetic to [Green's] situation of being in a three[-]person cell." (*Id.*) According to Officer Ragsdale, Green stated, "when I come out for my hour, I'm not going back in so get the captain up here." (*Id.* ¶ 4.) Officer Ragsdale was "concerned" that Green "planned to refuse to enter his cell when he was required to after his recreation period later in the day." (*Id.*) In response, Officer Ragsdale asked Green if he was saying that he was going to refuse to go in his cell and Green responded "why you ask that? Boy you don't want no smoke with me I'll smack the shit out of you." (*Id.*) Officer Ragsdale states that "[d]ue to [Green's] inappropriate and threatening language, which violated multiple [] policies, [he] ordered Green to lock down in his cell." (*Id.* ¶ 5.) As Green began walking to his cell, he continued to "look over his shoulder as he walked" and, "[w]hen he reached the threshold of the cell door, he began to turn around towards" Officer Ragsdale and "stated again, 'I'll smack the shit out of you,' while opening up his right hand." (*Id.*) Officer Ragsdale "believed Green was going to hit [him] as he had stated" and, therefore, he "pushed Green in the cell, with two open hands, and shut the door." (*Id.*) As soon as the door shut, within approximately three seconds, Green

stood at the window of his cell door, smiling, and said "I'm gonna get you," and asked for a supervisor. (*Id.* ¶ 6.) Shortly after this incident, Officer Ragsdale went to speak with Green in his cell. Officer Ragsdale explained to Green that "there are certain ways to ask for things and if [Green] had come to [him] in a better manner[, he] would have seen what [he] could have done to make [Green's] situation better." (*Id.* ¶ 7.) Officer Ragsdale states that during this conversation, Green was lying down on the cell floor with a blanket on him and he was laughing and saying things like "I'm gonna get you . . . I'm gonna have something for you." (*Id.*) Officer Ragsdale avers that Green made "no complaints of injury whatsoever," "did not ask for medical attention," "was smiling and laughing," and showed "no signs [that he] was in pain." (*Id.*) After the conversation, Officer Ragsdale called his supervisor, a sergeant, "to inform her [of] what had transpired." (*Id.* at ¶ 8.) The sergeant came to the unit and spoke with Green through the door to investigate the situation. Officer Ragsdale states that Green "was smiling at her while saying his shoulder hurt." (*Id.*) Officer Ragsdale avers that Green "had pre-existing injuries with his shoulder and was already on pain medication." (*Id.*) According to Officer Ragsdale, after speaking with Green, the sergeant determined that Green did not need any additional medical treatment.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Green alleges that Officer Ragsdale used excessive force against him. Finding genuine disputes of material facts, the court will deny Green's motion for summary judgment.

The Eighth Amendment protects inmates from cruel and unusual punishment. *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.

1996). To succeed on an excessive force claim, a prisoner must establish that "the officials acted with a sufficiently culpable state of mind" *and* that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quotation and alteration omitted); *see, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotations omitted); *see United States v. Gore*, 592 F.3d 489, 494 (4th Cir. 2010); *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). In determining whether the force used was excessive, the court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Green claims that after heated discussion and while Green was complying with the order to lock down, Officer Ragsdale "violently thrust" him and then tried to "fight" him while other officers had to "restrain" Ragsdale. Green states that he suffered multiple injuries and pain, for which he now requires surgery. Officer Ragsdale claims that after Green threatened to hit him and violated "multiple" policies, Ragsdale pushed Green into his cell with two open hands and shut the door. Officer Ragsdale states that Green suffered no injuries as a result of the incident. Green argues that Officer Ragsdale unnecessarily used force causing injury, while Ragsdale maintains that they only used the force necessary to restore order and no injury resulted. Having reviewed the record as a whole and drawing all reasonable

inferences in the light most favorable to Officer Ragsdale, the court concludes that there are genuine issues of material fact precluding summary judgment on the merits of Green's excessive force claim.[3]

### IV.

For the reasons stated, the court will deny Green's motion for summary judgment.

The clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 26th day of August, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[3] The court notes that Officer Ragsdale submitted video footage as requested by Green and ordered by the court. (*See* ECF Nos. 13 & 22.) The court has reviewed that video footage and finds that it is not dispositive of the issues before the court.