IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL DUCHELLE GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00151 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MR. KIAOS RAGSDALE, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendant. | ) | |

Plaintiff Michael Duchelle Green ("Green"), a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983, alleging that the defendant, Kiaos Ragsdale ("Officer Ragsdale"), used excessive force on him while he was housed at the Halifax Adult Detention Center, a local correctional facility operated by the Blue Ridge Regional Jail Authority ("BRRJA"). This matter is before the court on Officer Ragsdale's motion for summary judgment.[1] (ECF No. 115.) The facts of this case, as described by the parties, are adequately set forth in the court's prior Memorandum Opinion and need not be reiterated here. (*See* Mem. Op. pgs. 1–4, Aug. 26, 2022 [ECF No. 141].) As it relates to the present motion, Officer Ragsdale argues that he is entitled to summary judgment because, among other things, Green failed to exhaust his available administrative remedies at the BRRJA before filing suit.

---

[1] Green's summary judgment motion (ECF No. 101) was denied. (*See* ECF No. 142.)

Because the undisputed record before the court establishes that Green failed to exhaust his available administrative remedies before filing this action, the court will grant summary judgment.

## I.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to

determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence" to defeat an adequately supported motion for summary judgment. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The court's inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.

Officer Ragsdale argues that he is entitled to summary judgment because Green failed to exhaust his administrative remedies. (Officer Ragsdale's Memo. of Law in Supp. Mot. Summ. Judg. at 8 [ECF No. 116].) He points to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), which requires that an inmate exhaust his available administrative remedies before commencing a § 1983 suit for a deprivation of his constitutional rights. After reviewing the record, the court agrees that Green failed to exhaust his available administrative remedies.

### A. EXHAUSTION AND THE PRISON LITIGATION REFORM ACT

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether they meet federal standards or are plain, speedy, or effective. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks, it is nonetheless required. *Id.* Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust "*all*" levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 85, 90 (2006) (emphasis added).

Along with this, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C.

§ 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

### B. THE BRRJA'S GRIEVANCE PROCEDURE REQUIRES A GRIEVANCE APPEAL, OFFICER RAGSDALE SUBMITTED UNREFUTED PROOF THAT GREEN NEVER FILED A GRIEVANCE APPEAL, AND GREEN'S PURPORTED APPEALS ARE NOT AMONG THE DOCUMENTS THAT GREEN CLAIMS CONTAIN THEM

In support of his argument, Officer Ragsdale submitted the Declaration of Joshua Salmon ("Salmon"), Administrator of the BRRJA. Salmon describes the multi-step grievance process at BRRJA, which begins with a verbal complaint to the officer assigned to the inmate's housing unit.[2] (Salmon Decl. ¶ 4, Mar. 3, 2022 [ECF No. 116-2].) If the inmate is not satisfied with the resolution (or if there is no resolution), then he must submit an informal written Inmate Request Form to the shift leader, which the shift leader will respond to in writing. (*Id.*) Submission to the shift leader "completes the informal grievance process." (*Id.*)

If the grievance is not resolved through the informal grievance process, the inmate is required to submit a formal written Grievance Form to the housing unit officer which, in turn, is forwarded to the Site Administrator. (*Id.* ¶ 5.) "The Site Administrator reviews the grievance and responds in writing. If the inmate is dissatisfied with the response to his grievance," he may appeal to the BRRJA Administrator—here, Joshua Salmon. (*Id.* ¶ 6.)

Salmon states that "Inmate Green did not submit any grievance appeal [to him] regarding the allegations underlying this lawsuit." (*Id.* ¶ 9.) Accordingly, Officer Ragsdale argues that, since Salmon never received a grievance appeal from Green regarding Green's

---

[2] Salmon attached to his declaration BRRJA Standard Operating Procedure 15.01, the Inmate Grievance Procedures (ECF No. 116-2 at 3–6), which mirrors Salmon's description of it.

allegation of excessive force, Green failed to complete all steps of the BRRJA administrative process and, therefore, failed to exhaust his administrative remedies. (*See id.*)

In opposition, Green claims[3] that he exhausted his administrative remedies, pointing the court to two locations for the proof. (*See* Green's Summ. Judg. Opp. at 2 [ECF No. 122].) First, Green claims that he submitted 19 pages of BRRJA forms that he filled out in March and April 2021, after the February 10, 2021 incident. (*See* ECF No. 122 at 9). But those documents (*see* ECF No. 7) do not pertain to any grievance directed *at Officer Ragsdale's conduct*. Two of the documents are Grievance Forms complaining that Green was not receiving adequate medical treatment for alleged injuries he sustained to his neck, shoulder, and knee. One is a Grievance Form complaining that he was not receiving adequate medical treatment for his alleged poor eyesight. The rest are Inmate Request Forms that are effectively requests to be seen by someone from the detention center's medical department. In sum, these requests are all directed at Green's *medical care*; some of the medical conditions allegedly stem from the incident with Officer Ragsdale, and others are for plainly unrelated conditions. While the orthopedic-related complaints reference that he suffered neck, shoulder, and knee injuries *as a result of* the incident with Officer Ragsdale, none of them are directed *at Officer Ragsdale* or his alleged use of excessive force.[4] And a grievance about medical care does not necessarily imply

---

[3] Green filed an opposition to Officer Ragsdale's motion for summary judgment. (*See* ECF No. 122.) After Officer Ragsdale filed his reply (ECF No. 124), Green filed multiple sur-replies without leave—styled in various ways—at ECF Nos. 126, 127, 128, 132, 137, 138, and 151. Green's unauthorized responses are not sworn to under oath and penalty of perjury and therefore are not evidence. Although they were filed without leave of court, and although the arguments made in them are largely repetitive of those Green has already made and of which the court is aware, the court has nevertheless read and considered each of these submissions.

[4] Green has subsequently and repeatedly written to the court complaining about the medical treatment he is receiving while incarcerated, in which he names various medical personnel as "denying him a second opinion," and he has attached Inmate Request Forms complaining of the medical treatment he is receiving. (*See, e.g.*, Green's "Additional Evidence" filing at 1–2, June 1, 2021 [ECF No. 31]; Green's "Motion for Second Medical

excessive force, as opposed to justified force. Moreover, these records do not contain any Grievance Appeal Form to Salmon, which is the requisite last step to complete the BRRJA grievance procedure.

Second, Green states that he has additional "Grievances stored in the tablet[5] records." (*See* Green's Sum. Judg. Opp. at 2 (cleaned up).) He claims that "appeals were filed on the tablet . . . but all tablet records were not sent by the records custodian at Halifax Adult Detention Center,[6]" that he "sent Grievance Appeals to the Administrator, Mr. Salmon, which [Salmon] did not answer," and that he filed grievances with Captain Moore, some of which were answered and some of which were not. (Green's Sum. Judg. Add'l Opp. Filing at 4–5 [ECF No. 127] (cleaned up throughout).) Green's Verified Complaint also indicates that he filed grievances regarding the incident that is the subject of this lawsuit, and specifically that he wrote to "Captain Moore and Sgt. Coleman and Joshua Salmon." (Compl. at 1 [ECF No. 1].)[7]

---

Opinion," June 4, 2021 [ECF No. 35]; Green's "Additional Evidence," June 17, 2021 [ECF No. 38]; ECF No. 43 (same); ECF No. 45 (same); ECF No. 60 (same).) But Green has not named any medical personnel as defendants in this action, nor has he amended his complaint to include any or to assert an Eighth Amendment claim for deliberate indifference to serious medical needs against Officer Ragsdale or anyone else. (*See* Compl.) This summary judgment opinion does not prevent Green from filing a separate civil action (if he has not already) concerning his medical treatment complaints, subject to the applicable statute of limitations.

[5] Some inmates in BRRJA custody are able to possess a "J-Pay" tablet, a tablet that allows inmates to e-mail and store photographs and information, much like an iPad.

[6] Green is currently housed at the Lynchburg Adult Detention Center, another BRRJA facility.

[7] Green "submit[ted] a verified complaint in which he declared, under penalty of perjury, that the information contained in his complaint was true and correct." *Canterbury v. Adkins*, No. 3:18-CV-01530, 2020 WL 1891687, at *9 (S.D. W. Va. Jan. 9, 2020), *R&R adopted*, No. 3:18-CV-01530, 2020 WL 901813 (S.D.W. Va. Feb. 25, 2020) (*See* Compl. at 2 [ECF No. 1].) Green's verified complaint is therefore treated as "the equivalent of an opposing affidavit for summary judgment purposes." *Id.* (quoting *Greene v. Feaster*, 733 F. App'x 80, 81 (4th Cir. 2018)).

Green previously requested to subpoena his tablet records (*see* ECF Nos. 80, 81), but his requests were denied at that time. (*See* Order, Jan. 27, 2022 [ECF No. 96].) Green specifically complains about this denial in his "Response in Opposition (Part Two)" to Officer Ragsdale's summary judgment motion. (*See* ECF No. 126.) The subpoena requests to which Green refers were vague, overbroad, and lacked the requisite specificity of the records or categories of records sought and why they were necessary. (*See* Order, Jan. 27, 2022.)

But now Officer Ragsdale has raised the (potentially dispositive) issue of exhaustion, and Green claims that evidence of his relevant grievance appeals exist on his tablet. While the court took no issue with the prior denial,[8] the additional facts presently before the court indicate why the purported records—or their non-existence—are critical to the court's consideration of summary judgment. The court, based on Green's claims about the tablets containing requisite appeal paperwork, and on its own initiative, issued subpoenas *duces tecum* on Green's behalf to the Records Custodians of Halifax Adult Detention Center ("HADC") and Lynchburg Adult Detention Center ("LADC"), directing each facility to produce:

> A copy of all written complaints, grievance forms, and appeals—whether formal or informal, and including but not limited to Grievance Appeal Forms, Grievance Forms, Inmate Request Forms, and housing unit logbook entries, master grievance file entries, and grievance log entries—submitted by or pertaining to Michael Duchelle Green regarding an incident involving Officer Kiaos Ragsdale that took place on or about February 10, 2021, as well as all responses to and written records pertaining to those written complaints, grievance forms, appeals, or entries.
>
> The search for the above-required documents, if any, shall include any and all electronic "tablet" devices that Michael Duchelle Green utilized while detained at this facility, or, if such

---

[8] Notably, although Green could have objected within 14 days to the denial of his requests by the magistrate judge, he never did. *See* Fed. R. Civ. P. 72(a).

> records are not permanently stored on such electronic "tablet" devices, the appropriate server or other electronic medium that stores such records, as the case may be.
>
> If no such records exist, the Records Custodian or his or her designee shall return to the court a certification to that effect within the prescribed time period.

(Order, Jan. 12, 2023 [ECF No. 147].)[9] Each detention center complied with the subpoenas. (*See* HADC Subp. Resp., Jan. 25, 2023 [ECF No. 149]; LADC Subp. Resp., Jan. 31, 2023 [ECF No. 150].)

The subpoena responses together contained approximately 100 pages of grievances and other records, including Inmate Request Forms, Grievance Forms, grievance log entries, and records of grievance appeals. (*Id.*) The vast majority of them, however, do not pertain to the incident or to Officer Ragsdale. Instead, they are various requests for medical treatment or complaints about the alleged inadequacy of Green's medical treatment.

Only two records pertain to the incident and Officer Ragsdale's alleged use of excessive force. Specifically, each detention center returned copies of two Grievance Forms that Green submitted on February 21, 2021. (*See* HADC Subp. Resp. at 3–4; LADC Subp. Resp. at 10–11.) The first was from 8:46 a.m. and complained that Green was "hit in [his] back by officer Ragsdale on 2 10 21." (*Id.* (Grievance No. 117805153).) It stated that Green requested to "talk about this with Joshua Salmon . . . ." (*Id.*) But a request to talk to Joshua Salmon does not

---

[9] Green's statement that a relevant grievance appeal was on the tablets is argument contained in a brief, inadmissible as evidence, and therefore cannot create a genuine dispute of material fact. *See, e.g., VanPelt v. Stanley*, No. 7:21CV00139, 2022 WL 520803, at *3 (W.D. Va. Feb. 22, 2022) (collecting cases). Nevertheless, the court accepted Green's statement at face value and, in good faith, took the additional step of issuing subpoenas to determine whether the tablets, in fact, contained any evidence of grievance appeals.

constitute submitting—or even attempting to submit—a Grievance Appeal Form to him.[10] In accordance with the Grievance Procedure, Captain Moore logged this Grievance Form into the Grievance Logbook and assigned it Logbook Grievance number HC21-06. (HADC Subp. Resp. at 2.) As required by the Grievance Procedure, Captain Moore responded to this Grievance Form four days later, advising Green that "this alleged incident has been turned over to the Halifax Police Department. All findings will be addressed to you after they are finished with the investigation." (*Id.*)

The second relevant Grievance Form was submitted at 2:53 p.m. (*Id.* at 3.) It complained of substantially the same thing: "Ragsdale physically hit me in the back and it left me injured." (*Id.* (Grievance No. 117833863).) Captain Moore accordingly logged it into the Grievance Logbook as Grievance number HC21-05 and timely responded to the Grievance Form in writing with the same response he gave to Green's other, near-identical February 21, 2021 grievance. (*Id.* at 2–3.)

These two forms indicate that, prior to filing them, Green tried to resolve his grievance by talking to Sergeant Coleman and writing to the Captain. (*See id.*) Also, the Grievance Procedure requires that the Informal Procedures—the prerequisites to filing a Grievance Form—"must be followed and documented *before a written grievance form will be given out.*" (Grievance Procedure at 2 (emphasis added) [ECF No. 116-2].) The evidence before the court establishes that Green had access to the electronic equivalent of a Grievance Form. Accordingly, by the BRRJA's own rules, he necessarily completed the Informal Procedures.

---

[10] Also, as noted above, an appeal to Salmon is the *final* stage of the appeals process, not the first or an intermediate step.

The evidence therefore shows that Green satisfied all BRRJA Grievance Procedures up to and including his filing these two relevant Grievance Forms. But the record is equally clear that Green did not satisfy the last step in the Grievance Procedure: appealing Captain Moore's response to each of them. The detention centers' subpoena responses independently establish that no appeal was filed, conclusively verifying Salmon's declaration that he never received one from Green. Thus, Green did not exhaust his administrative remedies.

### C. GREEN'S FAILURE TO FILE A GRIEVANCE APPEAL IS NOT ATTRIBUTABLE TO ANY ACTION OR INACTION OF PRISON OFFICIALS

Because the record is clear that Green failed to exhaust his administrative remedies, the court is obligated to make sure that "any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda*, 478 F.3d at 1225; *see Kaba*, 458 F.3d at 684. Here, there is no evidence that prison officials interfered with Green's attempts to file grievances or appeals.

Tellingly, Green does not allege that he was prevented in any way from filing an appeal or that prison officials obstructed him from doing so. To the contrary, it appears that Green had the ability to file his many complaint forms with ease on a tablet that the detention facilities allowed him access to on a regular basis. (*See* Subp. Resps., *passim*.) In fact, Green claims that he *did* submit an appeal and that records proving as much were on the detention center tablets. The tablet evidence, however, refutes his assertion. Moreover, Green has submitted to the court *dozens* of his various administrative complaint filings to and about various detention center personnel, almost exclusively pertaining to his medical treatment, including Inmate Request Forms, Grievance Forms, and Grievance Appeals. But these filings are devoid of any evidence of a proper appeal related to his complaints about Officer Ragsdale's conduct.

Additionally, the evidence shows that Captain Moore timely responded to each of Green's two relevant Grievance Forms. Captain Moore's responses indicated to Green that the incident was turned over to the Halifax Police Department, as indeed they were. (*See* Halifax P.D. Incident Report, [ECF No. 150-1, at 71–75].) Green was apparently satisfied with Captain Moore's response, since he never appealed it. Likely realizing that the tablets do not contain any evidence of a relevant grievance appeal, Green has modified his argument. He now contends that Salmon was "brought up to speed" on a daily basis because, as he claims, Salmon was "made aware of" the criminal investigation. (*See* Add'l. Opp to Summ. Judg., Feb. 9, 2023 [ECF No. 151].) He also points to complaint letters that he lodged with the Virginia House of Delegates, the Halifax County Circuit Court, and this court. (*Id.*) But the fact that Green filed a criminal complaint against Officer Ragsdale, which the police were investigating, or that he wrote letters to judicial or legislative bodies does not excuse Green's failure to exhaust the available remedies under the BRRJA Grievance Procedure. *See Ross v. Blake*, 578 U.S. 632, 636–39 (2016) (rejecting the Fourth Circuit's "special circumstances" exception to the PLRA's administrative exhaustion requirement where an inmate plaintiff blamed his failure to exhaust in part on his reliance on an ongoing investigation by the Maryland prison system's Internal Investigative Unit which, under state law, had authority to investigate allegations of excessive force; and holding that "a court may not excuse a failure to exhaust, even to take such circumstances into account."). In sum, administrative remedies were available to Green; he simply chose not to use them, a choice that is fatal to his present claims.

### D. GREEN'S ASSERTION THAT HE FILED A GRIEVANCE APPEAL IS BLATANTLY CONTRADICTED BY THE RECORD

Although the evidence must on this summary judgment motion be construed in the light most favorable to Green, *see Anderson*, 477 U.S. at 255, Green may not rely on mere beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber*, 977 F.2d at 874–75 (4th Cir. 1992). Nor may he rely on the mere existence of a scintilla of evidence, *Dash*, 731 F.3d 303, like his verified complaint allegation that he "wrote [to]" Salmon. Once the movant comes forth with sufficient evidence establishing a fact, the nonmovant must come forth with some evidence to rebut it. *See, e.g., Gowen v. Winfield*, No. 7:20CV00247, 2022 WL 822172, at *4 (W.D. Va. Mar. 18, 2022) (collecting cases for the proposition that a prisoner's unsubstantiated and conclusory assertions attempting to excuse his failure to exhaust—even when made in a verified complaint—are insufficient on their own to withstand summary judgment). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

In this case, Officer Ragsdale has presented evidence conclusively establishing that Green never filed a grievance appeal regarding the alleged excessive force used in this incident. As already detailed, the court took the additional step of issuing subpoenas to two separate detention facilities where Green was housed to investigate his claim that the appeal records were extant on detention center tablets. As such, Green cannot rely on his complaint, which operates here as a self-serving affidavit that is blatantly contradicted by the documentary evidence (or lack thereof) on his tablets. *See id.* At bottom, the undisputed evidence

conclusively establishes that Green filed a grievance but then failed to appeal it. Since an appeal is a required step in the administrative grievance process, Green failed to satisfy the PLRA's exhaustion requirements. *See, e.g, Baber v. Neely, et al.*, No. 7:21CV00101, 2022 WL 340574, at *1 (W.D. Va. Feb. 4, 2022).

Because Green failed to complete all steps in the BRRJA Grievance Procedure and all steps were available to him, he therefore failed to properly exhaust all available levels of administrative remedies prior to filing this action. Accordingly, the court must grant Officer Ragsdale's motion.[11]

### III.

For the reasons stated, the court will grant Officer Ragsdale's motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 16th day of February, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[11] Because the court is granting Officer Ragsdale's motion on this ground, it does not reach Officer Ragsdale's arguments that (1) the undisputed evidence establishes that he did not violate Green's constitutional rights and (2), even if it does not, he is entitled to qualified immunity.